Filed 3/13/13  P. v. Gustafson CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ZACHARY WALTER GUSTAFSON,<br><br>Defendant and Appellant. | A135431<br><br>(Solano County<br>Super. Ct. No. FCR283609) |

Zachary Walter Gustafson (Gustafson) appeals from his conviction of two counts of inflicting corporal injury on a child.  He maintains the court erred in admitting his statement to police because he claims he asserted his right to counsel.  We conclude Gustafson did not unequivocally invoke his right to counsel under *Miranda*,[1] and affirm.

**PROCEDURAL AND FACTUAL BACKGROUND**

We set forth the background of this case to the extent necessary to address the sole issue on appeal.

Gustafson is the father of the victim in this case, four-year-old T.C.  On Friday, March 25, 2011, T.C.'s mother Amanda dropped him off at Gustafson's home for the weekend.  T.C. had no injuries at the time, other than a fading bruise on his face.

On Sunday, the day Amanda was to pick up T.C., Gustafson became frustrated while wrestling with T.C. and admitted to police he kicked him in the stomach "[w]ay harder than you should kick a 4 year old."  Later in the evening, Gustafson became angry

---

[1] *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

1

at T.C. and punched him in the stomach "way harder than I should've hit a kid." T.C. "grabbed his stomach and fell on the ground." As T.C. lay on the ground crying, Gustafson told him to "quit being a wha-wha." He grabbed T.C. by the neck and carried him to the bathroom, where he put him in the tub. Gustafson then went to his room and smoked marijuana.

T.C. got out of the tub and came to Gustafson's room, where he told him he was cold. He then fell to the ground and "pooped and blood came out of his butt." Gustafson "freaked out" and went to the home of a neighbor, Doyl Bean, who advised him to call 911. Instead, Gustafson called his girlfriend, and then the boy's mother.

T.C.'s mother picked him up and took him to a Kaiser emergency room. T.C. required a blood transfusion for internal bleeding, and was treated for abdominal injuries including a lacerated spleen, cuts to his neck, and petechiae. T.C. repeatedly told the treating physician Gustafson kicked him. Due to the severity of his injuries, he was transferred to a pediatric intensive care unit at U.C. Davis Medical Center, where he was treated by Dr. Coulter, a specialist in child abuse. Dr. Coulter opined T.C.'s "very unusual" injuries were "inflicted . . . [including] strangulation type," consistent with someone kicking or punching him, not by a dog jumping on him as Gustafson initially told police.

The Solano County District Attorney charged Gustafson with three felony counts of inflicting corporal injury on a child. (Pen. Code, § 273d, subd. (a).)[2] As to the first count, there was an allegation that he inflicted great bodily injury on a child under the age of five. (§ 12022.7, subd. (d).) The jury found him guilty of two counts, and found true the enhancing allegation. The court sentenced him to 11 years 4 months in prison. This timely appeal followed.

## DISCUSSION

Gustafson's sole claim on appeal is the court erred in admitting evidence of his statement to police because he invoked his right to an attorney under *Miranda*.

---

[2] All further undesignated statutory references are to the Penal Code.

2

The basic rules applicable to defendant's claims are well settled. "[W]e held in *Miranda* . . . , that a suspect subject to custodial interrogation has the right to consult with an attorney and to have counsel present during questioning, and that the police must explain this right to him before questioning begins. The right to counsel established in *Miranda* was one of a 'series of recommended "procedural safeguards" . . . [that] were not themselves rights protected by the Constitution but were instead measures to insure that the right against compulsory self-incrimination was protected.' [Citations.]" (*Davis v. United States* (1994) 512 U.S. 452, 457.)

"[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, [the Supreme Court's] precedents do not require the cessation of questioning." (*Davis v. United States*, *supra*, 512 U.S. at p. 459.) Instead, " ' "the interrogators may clarify the suspect's comprehension of, and desire to invoke or waive, the *Miranda* rights." ' " (*People v. Williams* (2010) 49 Cal.4th 405, 428, italics omitted.)

"On appeal, we conduct an independent review of the trial court's legal determination and rely upon the trial court's findings on disputed facts if supported by substantial evidence." (*People v. Williams, supra,* 49 Cal.4th at p. 425.)

There is no dispute that Gustafson was advised of his *Miranda* rights prior to questioning. The following colloquy then took place. "[Officer]: Do you understand those rights? [¶] Gustafson: Yeah. [¶] [Officer]: Yeah? Will you answer my questions and talk with me? [¶] Gustafson: Um, yeah. Is it Ok if like, like, can you like appoint me a lawyer, I don't know, I've never been in trouble . . . [¶] [Officer]: Well sure. You, well, Ok. We don't appoint the lawyers. You have a right to have a lawyer present. That doesn't happen today. [¶] Gustafson: Oh. [¶] [Officer]: In other words that means that we don't talk and that's Ok. That's your right. [¶] Gustafson: (unintelligible) [¶] [Officer]: Well, it's your choice (unintelligible) a lawyer. If you want to not talk with me without a lawyer that's your right. [¶] Gustafson: Oh. [¶] [Officer]: So it's your call, it's your choice. [¶] Gustafson: I was more talking about after, all this, do I like get

a lawyer (unintelligible) I've never been in trouble. [¶] [Officer]: Well that's, that's your call. When you go to court probably at some point one will be assigned to you. Yes. [¶] Gustafson: (unintelligible) [¶] [Officer]: But I can't, it's not ethical for me to tell you one way or the other. You have the right to either talk with me without a lawyer, on your own volition or your have a right to say no, I don't want to talk to you without a lawyer. That's your choice. [¶] Gustafson: I'll talk to you guys. [¶] [Officer]: You will? Ok. So it's ok if you answer our questions? [¶] Gustafson: Yeah. [¶] [Officer]: Ok. Without a lawyer? [¶] Gustafson: Yeah. Without one."

Gustafson acknowledges the California Supreme Court has held the statements " 'Did you say I could have a lawyer?' "[3] and " 'Maybe I ought to talk to my lawyer, you might be bluffing, you might not have enough to charge murder' "[4] were "equivocal requests for an attorney and not an invocation of *Miranda* rights." He maintains, however, "what occurred here was more closely aligned with the facts in *People v. Hinds* (1984) 154 Cal.App.3d 222," in which the court held the defendant's statement to police " 'Tell me the truth, wouldn't it be best if I had an attorney with me?' " was an unambiguous invocation of the right to counsel. (*Id*. at p. 231, 234–235.)

The *Hinds* holding was superseded over 20 years ago by Proposition 8. "[A]s we previously have recognized, subsequent to the adoption of article I, section 28, subdivision (d) of the California Constitution, we apply federal standards in reviewing a defendant's claim that his or her statements were elicited in violation of *Miranda*." (*People v. Crittenden*, *supra*, 9 Cal.4th at p. 129.) The federal standard, as we previously discussed, is set forth in *Davis v. United States*, *supra*, 512 U.S. at page 459, a case in which the court held the phrase " 'Maybe I should talk to a lawyer' " was equivocal and not an invocation of the right to counsel. (*Id*. at p. 455.)

More recently, in *People v. Williams*, *supra*, 49 Cal.4th 405, the California Supreme Court examined the following discussion between police and a defendant after

---

[3] *People v. Crittenden* (1994) 9 Cal.4th 83, 123, 130.
[4] *People v. Johnson* (1993) 6 Cal.4th 1, 27, 30, overruled on other grounds in *People v. Rogers* (2006) 39 Cal.4th 826, 878–879.

police read him his *Miranda* rights.  Police Officer Knebel "inquired whether defendant understood the rights that had been explained to him, and received an affirmative response.  Knebel asked:  'Do you wish to give up your right to remain silent?'  Defendant answered:  'Yeah.' Knebel asked:  'Do you wish to give up the right to speak to an attorney and have him present during questioning?'  Defendant answered with a question:  'You talking about now?'  Knebel responded:  'Do you want an attorney here while you talk to us?'  Defendant answered:  'Yeah.'  Knebel responded:  'Yes you do.'  Defendant returned:  'Uh huh.'  Knebel asked, 'Are you sure?'  Defendant answered:  'Yes.'  [Officer] Salgado stated:  'You don't want to talk to us right now.'  Defendant answered:  'Yeah, I'll talk to you right now.'  Knebel stated:  'Without an attorney.'  Defendant responded:  'Yeah.'  [¶] Knebel then explained:  'OK, let's be real clear.  If you . . . if you want an attorney here while we're talking to you we'll wait till Monday and they'll send a public defender over, unless you can afford a private attorney, so he can act as your . . . your attorney.'  Defendant responded:  'No I don't want to wait till Monday.'  Knebel repeated:  'You don't want to wait till Monday.'  Defendant replied:  'No.'  Knebel clarified:  'You want to talk now.'  Defendant replied:  'Yes.' Knebel inquired:  'OK, do you want to talk now because you're free to give up your right to have an attorney here now?'  Defendant responded:  'Yes, yes, yes.' " (*People v. Williams, supra,* 49 Cal.4th at p. 426.)  The court held "[i]n our view, the foregoing recitation of facts demonstrates defendant's knowing and voluntary waiver of his right to counsel." (*Ibid.*)

Likewise here we conclude Gustafson's initial statement was not an unequivocal assertion of the right to counsel, and his subsequent statements to police were a knowing and voluntary waiver of that right.

## DISPOSITION

The judgment is affirmed.

_____
Banke, J.

We concur:

_____
Margulies, Acting P. J.

_____
Dondero, J.

6